**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

| | | |
|---|---|---|
| **R. GARLAND STEADMAN and** § | | **PLAINTIFFS** |
| **SUSAN K. STEADMAN** § | | |
| § | | |
| § | | |
| **v.** § | | **Civil No. 2:25cv73-HSO-RPM** |
| § | | |
| § | | |
| **STATE FARM FIRE AND** § | | |
| **CASUALTY COMPANY** § | | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT STATE
FARM FIRE AND CASUALTY COMPANY'S MOTION [33] FOR PARTIAL
SUMMARY JUDGMENT AND DISMISSING PLAINTIFFS' CLAIMS
FOR EXTRACONTRACTUAL AND PUNITIVE DAMAGES**

In this homeowners' insurance coverage dispute brought by Plaintiffs R.

Garland Steadman and Susan K. Steadman, their insurer Defendant State Farm

Fire and Casualty Company seeks partial summary judgment as to their claims for

extracontractual and punitive damages. *See* Mot. [33]; Mem. [34]. Defendant's

Motion [33] should be granted, and Plaintiffs' claims for extracontractual and

punitive damages should be dismissed with prejudice.

**I. BACKGROUND**

A.    Factual Background

Plaintiffs R. Garland Steadman and Susan K. Steadman ("Plaintiffs" or the

"Steadmans") own a residence in Hattiesburg, Mississippi, which was insured under

a homeowner's insurance policy (the "Policy") issued by Defendant State Farm Fire

and Casualty Company ("Defendant" or "State Farm"). *See* Ex. [33-1]. The

Steadmans assert that their home suffered covered damage on two separate occasions, first during a hailstorm on or about April 15, 2022, and then in a second storm causing "wind-related damage, including water intrusion and interior damage" on or about May 5, 2023. Compl. [1-2] at 2. Plaintiffs submitted two separate claims to State Farm under their Policy. *Id.* They allege that "State Farm should have fully replaced the roof following the 2022 storm," but did not, which "allowed vulnerabilities to persist in the roofing system." *Id.* "As a result, when the property was subjected to high winds and rainfall during the 2023 storm, those vulnerabilities likely contributed to water intrusion and additional interior damage," which "could have potentially been avoided had State Farm properly handled the 2022 claim." *Id.*

State Farm's claim notes from May 5, 2022, state that it "found 2 photos of ice balls, possibly hail," and that the April 2022 hailstorm caused some damaged shingles. *See* Ex. [33-2] at 10. But this was determined to be "Minimal Hail damage to 1 of 4 directional slopes" and there was "Minimal wind damage visible on rear slope" of the property's roof. *Id.* at 8. State Farm "[e]stimated all needed repairs," *id.*, and determined that there was no damage to the dwelling exterior or interior, *see id.*, such that the loss fell below the Policy's deductible, *see id.* at 7. So, on May 24, 2022, State Farm sent Mr. Steadman a letter that read in relevant part:

> Thank you for the opportunity to review your Homeowners claim. We have completed our evaluation of your claim and have determined your loss does not exceed your $1,549.00 deductible. Therefore, we are unable to make a payment on this claim. Please see the enclosed estimate of damages for your personal records.

> While State Farm® has inspected your residence, an inspection of the interior of your home did not occur.  You advised that there was no interior damage in your home and, thus, no reason for State Farm to inspect the interior.  If you become aware of interior damage you believe may relate to this loss, or would want State Farm to inspect the interior of your home, please contact me as soon as possible to schedule an inspection.

Ex. [33-3] at 1.

Following the second storm, on May 12, 2023, Plaintiffs reported wind damage, including possible hail damage to siding and wind and hail damage to the roof.  *See* Ex. [33-5] at 7-8.  State Farm inspected the exterior damage on May 18, 2023, but was informed by Plaintiffs that the interior damage had already been repaired.  *See id.* at 7.   Plaintiffs provided photographs of the interior damage taken before the repairs were made, *see id.*, but later advised this interior damage was from the prior April 2022 claim, *see id.* at 6.  On May 22, 2023, State Farm concluded that its "inspection did not reveal any accidental direct physical loss" to the residence, and it was "unable to issue payment to [Plaintiffs]."  Ex. [33-6] at 1.

Plaintiffs then registered a complaint with the Mississippi Insurance Department.  *See* Ex. [33-8] at 1.  State Farm sent several responses to the complaint, disputing Plaintiffs' claims.  *See* Ex. [33-9] at 1-2; Ex. [33-10] at 1; Ex. [33-11] at 1.  According to State Farm, "a detailed and thorough investigation transpired and there is no reason to order an engineer's report," and "[o]ur claim decision is supported by our investigation and remains unchanged."  Ex. [33-11] at 1.

B.      Procedural History

On April 14, 2025, Plaintiffs filed suit against State Farm in the Circuit Court of Forrest County, Mississippi, *see* Compl. [1-2], which was removed to this Court, *see* Notice [1].  The Complaint [1-2] advances claims for breach of contract (Count I) and breach of the duty of good faith and fair dealing (Count II), and demands all contractual damages, including for repair and remediation expenses; "[a]dditional living expenses and/or loss of use expenses"; loss of personal property; the inability to make appropriate repairs due to inadequate payments under the Policy; diminution in Property value; attorneys' fees and costs; extracontractual damages, including emotional distress; punitive damages; and pre- and post-judgment interest.  *See* Compl. [1-2] at 3-4.

State Farm now seeks partial summary judgment on Plaintiffs' extracontractual and punitive damages claims.  *See* Mot. [33] at 1.  It takes the position that the evidence shows that it possessed "reasonable, arguable bases for its decisions on the Steadmans['] insurance claims," Mem. [34] at 12, and that it "acted promptly throughout the claim handling process, considered all information submitted by the Steadmans, and conducted its own investigations into the April 2022 claim and May 2023 claim," *id.*  State Farm believes that, because its decision was reached in good faith and the Steadmans cannot produce evidence showing malice in the claims handling process, neither punitive nor extracontractual damages are appropriate.  *See id.* at 12-18.

Plaintiffs object to some of the evidence relied upon by State Farm, *see* Mem. [36] at 16-17, and respond that "[t]he record is replete with evidence of storm-related damage, expert opinions of causation by covered weather events, and material disputes regarding the adequacy and fairness of State Farm's investigation," *id.* at 1.  Specifically, Plaintiffs maintain that State Farm conducted an inspection in their absence "despite repeated requests to reschedule, failed to perform a meaningful interior inspection after reports of water intrusion, issued conclusory denial letters that did not address contrary evidence, and communicated claim determinations to a visually impaired insured without accommodation." *Id.* at 2.  Plaintiffs argue that, even though they promptly reported their losses to and fully cooperated with State Farm, it did not issue any payment for either loss, and it failed to conduct a reasonable and thorough investigation, issued denials that were contrary to the evidence, and made no effort to communicate its conclusions to Mr. Steadman, who is blind.  *See id.* at 3-13.  According to Plaintiffs, there are genuine issues of material fact as to whether State Farm lacked a legitimate or arguable basis to deny their claim, which precludes summary judgment.  *See id.* at 18-25.

In its Reply [37], State Farm counters that "the battle of the experts as to the existence and extent of storm-related damage supports the existence of reasonable basis for State Farm's claim handling decisions."  Reply [37] at 7.  As for Mr. Steadman's blindness, "not only do the Steadmans notably neglect to include the record of phone call conversations explaining the contents of the written communications," but they also "fail to note that Mrs. Steadman, the other named

insured and Plaintiff in this lawsuit, was not visually impaired" and read Mr. Steadman's mail to him, if he did not utilize a reader. *Id.* at 8. State Farm contends that it did not fail to accommodate Mr. Steadman, and even if it did, any such failure had no impact on the claims investigations. *See id.*

## II.  DISCUSSION

### A.    Relevant Legal Authority

### 1.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment in a party's favor is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this initial burden, the nonmovant must present evidence beyond the pleadings and demonstrate "specific facts showing that there is a genuine issue for trial." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the nonmovant must show, with "significant probative evidence," that there exists a genuine issue of material fact for resolution at trial. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022) (quotation omitted). Although the Court views all facts and inferences in the light most favorable to the

6

nonmovant, *see RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010), conclusory allegations and unsubstantiated assertions are not enough to survive summary judgment, *see Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) (quotation and alteration omitted).  At summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  At this stage, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)).  "Upon objection, '[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" *People Source Staffing Pros., L.L.C. v. Robertson*, No. 21-30368, 2022 WL 3657186, *1 (5th Cir. Aug. 25, 2022) (per curiam) (quoting Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

2.    Punitive Damages under Mississippi Law

In a diversity case such as this one, the Court applies the substantive law of the forum state, Mississippi.  *See CBE Group, Inc. v. Lexington Law Firm*, 993 F.3d

346, 350 (5th Cir. 2021).  Under Mississippi law, an insurer owes its insured a duty to properly investigate a claim and "to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 71 (5th Cir. 2014) (quotations omitted).

Punitive damages may not be awarded if the plaintiff "does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."  Miss. Code Ann. § 11-1-65(1)(a).  A plaintiff bears "a heavy burden when seeking punitive damages based on a bad faith insurance claim." *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001) (quotation omitted).  Punitive damages are "recoverable only in extreme cases," and as a general rule, they "are not ordinarily recoverable in actions for breach of contract." *Snow Lake Shores Prop. Owners Corp. v. Smith*, 610 So. 2d 357, 362 (Miss. 1992) (quotations omitted).

Where, as here, a plaintiff seeks to recover punitive damages on a theory of bad-faith refusal to pay an insurance claim, he or she must demonstrate:  (1) there was a refusal to pay a claim or to honor an obligation under an insurance policy; (2) "the claim or obligation was in fact owed"; (3) "the insurer has no arguable reason to refuse to pay the claim or to perform its contractual obligation"; and (4) "the insurer's breach of the insurance contract results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (quotation

8

omitted).  Whether the insurer lacked an arguable or legitimate basis for denying the claim and whether it committed a willful or malicious wrong or acted with gross and reckless disregard for the insureds' rights are both questions of law for the trial judge.  *See Jenkins,* 794 So. 2d at 233.  The Mississippi Supreme Court has defined "arguable reason" as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to heightened level of an independent tort." *Caldwell v. Alfa Ins. Co.,* 686 So. 2d 1092, 1096 (Miss. 1996) (quotations omitted).  A court "look[s] to the totality of the circumstances to determine whether [the insurer] had an arguable or legitimate basis for its delay."  *James*, 743 F.3d at 71; *see also Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 633 (5th Cir. 2015) ("The totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages are appropriate." (quoting *Hartford Underwriters Ins. Co. v. Williams*, 936 So.2d 888, 896 (Miss. 2006)).

Insurers also have a duty "to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation and may be liable for punitive damages for denying a claim in bad faith."  *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627 (5th Cir. 2008) (quotation omitted).  But a finding of bad faith requires more than a showing of mere negligence in performing an investigation.  *See United Servs. Auto. Ass'n (USAA) v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010).  "The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit."  *Id.* (quotation omitted).

To establish a claim for bad faith delay, a plaintiff must show: 1) the insurer had a contractual obligation to the insureds; 2) the insurer lacked an arguable or legitimate basis for its delay in paying the claim; and 3) the insurer's failure resulted "from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *James*, 743 F.3d at 70 (quotation omitted). "Once an insurance company articulates an arguable or legitimate reason for its payment delay, the insured bears the burden of demonstrating that the insurer had no arguable reason." *Id.*

Finally, "the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1399 (5th Cir. 1986). It has labeled such legitimate disputes as "nothing more than . . . pocketbook dispute[s]" that do not rise to the heightened level of an independent tort. *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 139 (Miss. 1998).

Where a plaintiff does not succeed in carrying the "heavy burden" of proving bad faith, extracontractual damages, such as for emotional distress and attorneys' fees, may nevertheless be recoverable. *Id.* at 1178 (quotation omitted); *see also Fulton v. Mississippi Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 289 (Miss. 2012) ("Extracontractual damages . . . are intended to cover reasonably foreseeable costs and expenses, such as attorney's fees."). Because the lack of a legitimate or arguable reason is required to award extracontractual damages (whether or not

10

punitive damages are also awarded), an insurer's arguable basis for denying a claim or for determining the value of damages not only precludes a punitive damage award, but also one for extracontractual damages. *See Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 708-09 (5th Cir. 2020); *Essinger*, 529 F.3d at 272. So, the threshold question in resolving State Farm's Motion is whether it had a legitimate or arguable reason for the manner in which it handled Plaintiffs' claims. *See, e.g., Mitchell*, 954 F.3d at 708-09; *Essinger*, 529 F.3d at 272.

B.    Analysis

1.    Whether the Court Can Consider State Farm's Claim Notes

Plaintiffs argue that State Farm's internal claim notes, which are attached as Exhibits 2 and 5 to State Farm's Motion [33], *see* Ex. [33-2]; Ex. [33-5], "are not properly authenticated and should not be considered at summary judgment," because they "constitute hearsay under Federal Rule of Evidence 801" to which no exception has been shown to apply. Mem. [36] at 16-17. State Farm is "not obliged to authenticate its summary-judgment evidence," but it must show that it could be authenticated at trial. *People Source Staffing Pros., L.L.C.*, 2022 WL 3657186, at *1. Even if State Farm has not demonstrated that the claim notes are admissible themselves at this stage, the relevant question is whether a fact or facts relied upon in the claim notes is "*capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC*, 835 F.3d at 534 (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)).

11

The claim notes were made by identified State Farm employees on various occasions throughout the pendency of each claim, and they document State Farm's reporting and investigation.  *See* Ex. [33-2]; Ex. [33-5].  To the extent the claim notes are not themselves admissible, those State Farm employees could offer live testimony as to the facts contained in their claim notes, *see* Ex. [33-2]; Ex. [33-5], making them capable of being presented in an admissible form, *see LSR Consulting, LLC*, 835 F.3d at 534.  Plaintiffs' evidentiary objection to the claim notes is therefore overruled at this stage, and the Court can properly consider them in resolving State Farm's Motion [33].  *See id.*; *Campos*, 10 F.4th at 521.

2.      Whether State Farm is Entitled to Partial Summary Judgment

Plaintiffs seek extracontractual and punitive damages because State Farm allegedly intentionally, recklessly, and in bad faith failed to properly investigate, undervalued their damages, and failed to make payment on clearly covered losses. *See* Compl. [1-2] at 3; *see* Mot. [33]; Mem. [34].  Plaintiffs' first claim under the Policy related to an April 15, 2022, storm, which allegedly damaged the shingles on the roof.  *See* Ex. [33-3] at 1; Ex. [33-2] at 10.  Mrs. Steadman submitted a claim for hail damage on May 2, 2022, *see* Ex. [33-9] at 1, and two days later, on May 4, 2022, State Farm reviewed photographs and "found 2 photos of ice balls, possibly hail, on a deck surface," Ex. [33-2] at 10.  It contacted Mr. Steadman three days later, on May 7, 2022, explained the claims handling process, and noted an inspection was pending.  *See id.* at 9-10.

State Farm met with Mr. Steadman and conducted an inspection on May 20, 2022. *See id.* at 8. It determined that there was "[m]inimal [h]ail damage to 1 of 4 directional slopes" of the 17-year-old metal roof surface and "[m]inimal wind damage visible on rear slope" and estimated the repairs needed. *Id.* There was no interior damage reported, and Mr. Steadman apparently "stated that there was none." *Id.* Four days later, State Farm determined that the covered loss sustained was $440.49, which fell below the Policy's $1,549.00 deductible. *See id.* at 7; Ex. [33-4] at 3-6. State Farm mailed Mr. Steadman a letter the same day explaining its findings and stating that it was "unable to make a payment on this claim." Ex. [33-3] at 1.

The second claim stemmed from purported wind and hail damage from a storm on May 5, 2023, *see* Ex. [33-6] at 1, which Mr. Steadman reported to State Farm the next day, *see* Ex. [33-9] at 1. According to Mr. Steadman, there was wind and hail damage to the roof as well as interior water damage. *See id.* State Farm inspected the property on May 18, 2023, but Plaintiffs were not present. *See id.* The inspector "did not find any new or discernable damage from the previous claim," and "[r]epairs were estimated below the deductible," meaning no payment was made. *Id.* Mr. Steadman was advised to send photographs of interior damage, and on May 22, 2023, State Farm informed Mr. Steadman that its "inspection did not reveal any accidental direct physical loss to your home," such that State Farm was "unable to issue payment to [him]." *Id.*; *see* Ex. [33-7] (finding no covered loss).

13

State Farm has also presented evidence from a retained structural engineer who opined that the April 2022 storm "did not damage the roof covering and did not create vulnerabilities to the roofing system that would have caused or even contributed to subsequent water intrusion and additional interior damage." Ex. [33-16] at 13. "[W]ind damage to the roof covering was very minor" in his opinion, and "one cannot say with certainty that the isolated locations of shingles with inadequate seal strips were the result of the May 2023 wind event." Ex. [33-16] at 13. The structural engineer found that, regardless of the cause of the roof damage, "these locations are not leaking and did not contribute to the reported issues of interior water damage." *Id.* Instead, that water damage was caused by separation of "BUR cap sheets," which occurred prior to the earlier April 2022 storm. *Id.* at 14. And while the roof needed to be replaced, "the justification for its replacement stems from age, normal weathering and degradation, along with improperly designed valley trough details," such that "State Farm's scope of work was accurate . . . ." *Id.* State Farm has presented an adequate prima facie case showing a reasonable basis for denial. *See James*, 743 F.3d at 70.

In contrast, Plaintiffs point to their expert engineer, who determined that the hail event impacted the roof broadly and necessitated its full replacement, and to their damages expert, who testified that the estimated repairs total $43,156.33. *See* Mem. [36] at 10-12. But this constitutes a battle of the experts for the underlying breach of contract claim and is insufficient to show that State Farm lacked an arguable reason for its claims decisions. *See Dewey St. Church of Christ v. Church*

14

*Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP, 2020 WL 7133003, at \*7 (S.D. Miss. Dec. 4, 2020) ("[A]n insurer's reliance on an independent expert provides, 'at the very least, an arguable basis for denying [a] claim.'" (quoting *Hans Const. Co., Inc. v. Phoenix Assur. Co. of New York*, 995 F.2d 53, 55 (5th Cir. 1993) (alteration in original)). State Farm has presented evidence reflecting its arguable reason for valuing the claims as it did and denying them, and Plaintiffs have not demonstrated that State Farm lacked an arguable reason to refuse to pay, which is fatal to their extracontractual and punitive damages claims.  *See, e.g., Mitchell*, 954 F.3d at 708-09; *James*, 743 F.3d at 70; *Essinger*, 529 F.3d at 271-72.  Instead, what has been presented is a pocketbook dispute involving a battle of the experts.  And "an insurer's reliance on an independent expert provides, 'at the very least, an arguable basis for denying [a] claim.'"  *Dewey St. Church of Christ*, 2020 WL 7133003, at \*7 (quoting *Hans Const. Co., Inc.*, 995 F.2d at 55) (alteration in original); *see Branson v. State Farm Fire & Cas. Co.*, No. 3:23-CV-491-CWR-ASH, 2024 WL 4653181, at \*3 (S.D. Miss. Nov. 1, 2024) (same).  Because Plaintiffs have not created a material fact question showing that State Farm lacked an arguable reason for refusing to pay their claim or value it as it did, summary judgment should be granted as to any claim for bad faith denial or undervaluing.  *See Mitchell*, 954 F.3d at 708-09; *James*, 743 F.3d at 70; *Essinger*, 529 F.3d at 271-72.

With respect to bad faith delay, State Farm has argued that no money was owed under the Policy, which is why the claims have not been paid.  While the parties have significantly different takes as to any amounts owed based upon their

15

experts' conclusions, Plaintiffs have not presented competent summary judgment evidence to show that State Farm lacked an arguable or legitimate basis for its delay in paying the April 2022 and May 2023 claims. *See James*, 743 F.3d at 70. And to the extent Plaintiffs argue that State Farm's investigation was improper, bad faith requires more than a showing of mere negligence. *See Lisanby*, 47 So. 3d at 1178. Plaintiffs have not cited any competent summary judgment evidence that would tend to show that a proper, non-negligent investigation would easily have adduced evidence demonstrating that additional funds are owed for either claim. *See id.* Plaintiffs' extracontractual and punitive damages claim based upon bad faith delay or investigation should therefore be dismissed. *See id.*

Plaintiffs cite *Estate of Minor v. United Services Automobile Association*, 247 So. 3d 1266, 1273 (Miss. Ct. App. 2017), for the proposition that their bad faith and punitive damages claims present jury questions. *See* Mem. [36] at 21-22. State Farm has thoroughly distinguished that case in its Reply [37], *see* Reply [37] at 1-7, and the Court agrees with its analysis, *see id.* The Mississippi Court of Appeals' decision in *Estate of Minor* focused on the circuit court's "finding '[t]he Minors did show credible material proof that *USAA did not have a reasonable or arguable reason* to make its claims decisions,'" which led "to the conclusion that this finding was and should have been enough to defeat the motion for partial summary judgment." *Est. of Minor*, 247 So. 3d at 1271 (emphasis in original). Plaintiffs in this case have not presented "credible material proof that [State Farm] *did not have*

16

a *reasonable or arguable reason* to make its claims decisions." *Id.* (emphasis in original).  *Estate of Minor* is distinguishable.  *See id.*

Finally, Plaintiffs inject an argument in their briefs not raised in the pleadings regarding State Farm's communication with Mr. Steadman by mail, arguing that this was unreasonable in light of his blindness.  *See* Mem. [36] at 20. But Mrs. Steadman testified that if mail came to Mr. Steadman, she would either "open it and read it to him" or he would take it to his office where "he has a reader that reads to him . . . ." Ex. [37-1] at 2 (page 59 of Mrs. Steadman's deposition). Plaintiffs have not shown how they would be entitled to extracontractual or punitive damages based upon State Farm's method of communication with Mr. Steadman.  *See* Mem. [36].

In sum, Plaintiffs have not pointed to sufficient competent summary judgment evidence to create a material fact question that State Farm lacked an arguable basis for its claims handling decisions.  Summary judgment should be granted on Plaintiffs' extracontractual and punitive damages claims.

### III.  CONCLUSION

To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.  State Farm's Motion [33] for Partial Summary Judgment should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [33] for Partial Summary Judgment filed by Defendant State Farm Fire and Casualty

17

Company is **GRANTED**, and Plaintiffs R. Garland Steadman and Susan K. Steadman's claims for extracontractual and punitive damages are **DISMISSED WITH PREJUDICE**.

SO ORDERED AND ADJUDGED, this the 14th day of May, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE